IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| ANDREW REICHOLD, MICHAEL FANSLER, JENNIFER MARSHALL,, ) ) ) Plaintiff, ) ) v. ) ) CHICAGO POLICE OFFICERS D. P. ) CONDREVA (#7276), TIMOTHY BLAKE ) (#9574), SUPERINTENDENT DAVID ) BROWN, and CITY OF CHICAGO, ) ) Defendants. ) | Case No. 1:23-cv-02251<br><br>Judge Sharon Johnson Coleman<br>Magistrate Judge Jeffrey T. Gilbert |

**PLAINTIFFS' MOTION TO COMPEL DEFENDANT CITY OF CHICAGO TO
PRODUCE DEFENDANTS CONDREVA'S AND BLAKE'S CR FILES**

Plaintiffs, by their attorneys, having satisfied the requirements of Local Rule 37.2, move this Court, pursuant to Fed. R. Civ. P. 34 and 37, for an order which compels Defendant City of Chicago to produce Defendants Condreva's and Defendant Blake's CR files, as specified below. In support of this motion, Plaintiffs states as follows.

**BACKGROUND**

1. This is a § 1983 case against the City of Chicago, and Chicago Police Officers D.P. Condreva and Timothy Blake, involving allegations of police misconduct during the summer 2020 protests against racist police violence. *See* Dkt. 23, Am. Compl. On May 30, 2020, Plaintiffs Andrew Reichold, Michael Fansler, and Jennifer Marshall joined one of the protests in downtown Chicago. Plaintiff Reichold sustained injuries to his head, back, legs, and buttocks after unknown Chicago Police Department (CPD) Officers repeatedly struck him in the head with their batons and he was subsequently falsely arrested by Defendant Officer D.P. Condreva. *Id.* ¶¶ 42–58. Plaintiff Fansler sustained injuries after Defendant Officer Timothy Blake and

unknown CPD officers pushed and struck him with their baton and shields and kicked him while he was on the ground without justification. *Id.* ¶¶ 59–75. Plaintiff Marshall sustained injuries after unknown CPD Officers repeatedly pushed, jabbed, and struck her with batons and shields without justification. *Id*.

2. In addition to their claims against Defendants Condreva and Bake, Plaintiffs Reichold, Fansler, and Marshall allege that the harms they suffered were the direct result of Defendant City of Chicago's and CPD's *de facto* policies and practices. These policies and practices include, but are not limited to, using unjustified and often lethal force against protesters, retaliating against protesters who speak out against police violence, failing to adequately train officers to respond to protests, the police code of silence, and failing to discipline, supervise, monitor and control officers who engage in misconduct. *Id.* ¶¶ 88–125.

3. This motion seeks to compel full responses to document requests about misconduct complaints against Defendants Condreva and Blake.

**PROCEDURAL HISTORY AND COMPLIANCE WITH LOCAL RULE 37.2**

4. Plaintiffs served their Request for Production of Documents on Defendant City of Chicago on December 5, 2023. Request for Production Number 5 sought the complete disciplinary background of Defendants Blake and Condreva, including any and all internal affairs, OPS, IPRA, COPA, intra or inter departmental, and citizen complaints, including all documents related to every complaint and investigation. *See* Ex. A, Defendant City of Chicago's Response to Plaintiff's Request for Production Number 5.

5. On December 26, 2023, Defendants' moved to bifurcate and stay discovery of Plaintiffs' *Monell* claims. Dkt. 41. On January 10, 2024, the Court denied Defendants' motion. Dkt. 44.

6. Defendant City provided responses to Plaintiffs' Request for Production on February 12, 2024. Defendant City's response to Request Number 5 contained numerous objections and stated that it would produce on a rolling basis:

> (1) CMS Histories, (2) CLEAR - search results, (3) Disciplinary Action History; (4) CLEAR log files for Complaint Registers ("CRs") for incidents that occurred during the period of May 30, 2015 through the present that have been found to be "sustained," if any; (5) CLEAR log files for CRs that contain allegations similar to those being made in this matter that occurred during the period of May 30, 2015 through the present, if any; (6) Facesheets, Quick View print-outs and/or Complaints against each Defendant Officer for any remaining file numbers listed in the Employee Complaint History form CRMS, the CMS History, and the Five-Year Employee Complaint History during the period of May 30, 2015 thought the present.

*See* Ex. A.

7. On February 26, 2024, Plaintiffs emailed Defendant City pursuant to Local Rule 37.2, stating that they did not agree to limit their request to CRs for incidents that occurred five years prior to the incident in this matter to the present, and did not agree to limit their request to CRs that have been sustained. Plaintiffs stated that Defendants must produce *all* of Defendant Blake's and Condreva's CR files from their entire career regardless of the disposition (i.e., sustained, not sustained, etc.) and regardless of whether the allegations are similar or dissimilar to those being made in this matter. Plaintiffs provided Defendants the following precedent from this district which supports their position—*Clark v. Ruck*, 2014 WL 1477925, *2 (N.D. Ill. Apr. 15, 2014); *Grayson v. City of Aurora*, 2013 WL 6697769, *3-6 (N.D. Ill. Dec. 19, 2013); *Vodak v. City of Chicago*, 2004 WL 1381043, *5 (N.D. Ill. May 10, 2004); *Lepianka v. Vill. of Franklin Park*, 2004 WL 626830, *2 (N.D. Ill. Mar. 25, 2004). *See* Ex. B, Feb. 26, 2024 Email.

8. On February 27, 2024, Defendant City responded to Plaintiffs' email, stating that it maintained its objection to producing any CLEAR log files for CRs where the allegations are "both un-sustained and dissimilar." *See* Ex. C, Feb. 27, 2024 Email.

3

9. The parties held a meet and confer phone call related to this issue on March 6, 2024. During this phone call, Defendant City affirmed its position that it would not produce any CR filed that were both un-sustained and dissimilar (based on its unilateral review of the file), but requested until March 21, 2024 to review additional "components" of the CR files it intended to withhold before finalizing its position. *See* Ex. D. March 7, 2024 Email. The parties determined that the time frame of the requests was not an issue because Defendants Condreva and Blake were both appointed as CPD officers within 5 years of the incident.

10. On April 3, 2024, the parties held a second meet and confer phone call. Defendant City confirmed that it was standing on its objection and the parties reached an impasse.

## ARGUMENT

11. The federal notice pleading system contemplates that parties will have broad discovery to investigate the facts and help define and clarify the issues. *Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 351 (1978); *see also Kodish v. Oakbrook Terrace Fire Prot. Dist.*, 234 F.R.D. 447, 450 (N.D. Ill. 2006). Accordingly, Federal Rule of Civil Procedure 26(b)(1) provides:

> Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit. Information within this scope of discovery need not be admissible in evidence to be discoverable.

Fed. R. Civ. P. 26(b)(1). Information is relevant if it "bears on" or "reasonably could lead to other matter that could bear on" any material facts or issue in the action. *Oppenheimer*, 437 U.S. at 351. "The burden rests upon the objecting party to show why a particular discovery request is improper." *Parvati v. Oak Forest*, 2010 WL 2836739, at *1 (N.D. Ill. July 19, 2010). In this

context, this Court exercises "extremely broad discretion in controlling discovery." *Jones v. City of Elkhart*, 737 F.3d 1107, 1115 (7th Cir. 2013).

12. It is well-established that in § 1983 cases involving allegations of police misconduct—especially cases like this one that involve a *Monell* claim for failure to supervise, monitor, discipline and control police officers (*see* Dkt. 23, ¶¶ 108-121)—the defendant officers' complete CR files are discoverable because they could contain evidence that supports the plaintiff's *Monell* claim and evidence that is admissible under Fed. R. Evid. 404(b). *See Grayson v. City of Aurora,* 2013 WL 6697769, *3–6 (N.D. Ill. Dec. 19, 2013) ("Grayson's request for the individual Defendants' … complaint files is reasonably calculated to lead to the discovery of admissible evidence relevant to his *Monell* claim" and "the records are also discoverable because they may contain admissible FRE 404(b) evidence."); *Vodak v. City of Chicago,* 2004 WL 1381043, *5 (N.D. Ill. May 10, 2004) ("Numerous courts have held that … complaint histories of defendant officers are relevant to § 1983 actions involving police misconduct, particularly where, as here, plaintiffs allege a *Monell* policy, practice and custom claim against the municipality."); *Lepianka v. Vill. of Franklin Park,* 2004 WL 626830, *1–2 (N.D. Ill. Mar. 26, 2004) (allowing discovery of defendant officers' disciplinary records in a § 1983 action alleging excessive force since that discovery may turn up evidence admissible under Fed. R. Evid. 404(b)).

13. Defendant City's objection to producing CRs where the allegations are "both unsustained and dissimilar" has no basis in law. Courts in this district have repeatedly rejected defendants' attempts to limit disclosure of prior complaints to complaints that are similar to those raised in the lawsuit. *See Vodak*, 2004 WL 1381043, *5 ("Defendants argue that the Court should limit disclosure of prior complaints against defendant officers to the past five years and only

5

those complaints similar to those raised in this lawsuit. The Court declines to so limit discovery. Plaintiffs are entitled to discover defendant officers' complaint histories, and the trial judge will determine before or at the trial whether 'other acts' are similar enough and close enough in time to be relevant to the matter in issue and thus, admissible."); *Lepianka,* 2004 WL 626830, *2 (same); *Clark v. Ruck*, 2014 WL 1477925, *2 (N.D. Ill. Apr. 15, 2014) (same).

14. Defendant City's position—that it should be permitted to unilaterally review CR files to determine what files it deems are similar or dissimilar—unfairly forces Plaintiffs to rely on their opponents' assessment of what evidence is relevant to their claims. Moreover, this procedure only serves to add unnecessary delay to the discovery process, as reflected by the procedural history of this dispute. Instead of simply producing all of the Defendants' CR files months ago in response to Plaintiffs' discovery requests, the parties have had to engage in drawn out Rule 37.2 communications and now motion practice, which is contrary to the purposes of the Federal Rule of Civil Procedure as stated in Rule 1: "to secure the just, speedy, and inexpensive determination of every action…."

15. Defendant City's claim that producing all of the CR files is unduly burdensome is without merit. All of the CR files at issue are currently in the defense counsel's possession. Thus, there is no burden related to defense counsel obtaining these materials from its client. The amount of time it would require defense counsel to bates stamp and produce these materials cannot possibly be "unduly burdensome." Defendant City has provided no evidence or affidavits of the length of time it will take to bates stamp and produce the records. Further, all of this must be considered against the backdrop that *Monell* discovery is routinely more complex, time-consuming, and costly than discovery against individuals. *See*, *e.g.*, *Elrod v. City of Chicago*, 2007 WL 3241352, *5 (N.D. Ill. Nov. 1, 2007); *Medina v. City of Chicago*, 100 F. Supp. 2d 893,

895 (N.D. Ill. 2000). Quite often it involves the production of many files and documents relevant to establishing the type of widespread customs alleged in this case. The discovery requested here is far narrower in breadth and scope than typical *Monell* discovery that defendants, including the City of Chicago, have been ordered to produce in similar cases in this District. *See, e.g., Awalt v. Marketti*, 2012 WL 6568242, *6 (N.D. Ill. Dec. 17, 2012) (the court ordered the production of hundreds of inmate medical files for a five-year period, reasoning that the plaintiff's *Monell* theory required her to "prove more than just one, or two, or even three instances of inadequate medical care."); *Prince v. Kato*, 2020 U.S. Dist. LEXIS 65981 (N.D. Ill. Apr. 15, 2020) (the court ordered the City of Chicago to produce hundreds of homicide and complaint register files for a four-year period); *Padilla v. City of Chicago*, 2011 WL 3651273 (N.D. Ill. 2011) (the Court found that the Magistrate Judge had committed clear error by refusing to order the disclosure of five years of misconduct reports across the entire Chicago Police Department).

  WHEREFORE, Plaintiff respectfully requests that this Court issue an order which compels Defendant City of Chicago to produce all of Defendant Condreva's and Defendant Blake's CR files.

Dated: April 7, 2024            Respectfully submitted,

/s/ Ben H. Elson
Ben H. Elson, Brad J. Thomson
Janine Hoft, Nora Snyder, Jan Susler,
Hakeem Muhammad
People's Law Office
1180 N. Milwaukee Ave.
Chicago, IL 60642
773-235-0070

Sheila A. Bedi
Community Justice and Civil Rights Clinic
Northwestern Pritzker School of Law
375 East Chicago Avenue

Chicago, IL 60611-3609
312-503-8576

Jonathan Manes
MacArthur Justice Center
160 E. Grand Ave, 6th Fl.
Chicago, IL 60611
312-503-0012

***Counsel for Plaintiffs***